UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINDY BOWEN and DIANE DILLASHAW, on behalf of themselves and a class of all others similarly situated,<br><br>                      Plaintiffs,<br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION; CAPITAL ONE, N.A.; and CAPITAL ONE BANK (USA), N.A.,<br>                      Defendants. | Civil Action No.<br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Cindy Bowen and Diane Dillashaw, individually and on behalf of a class of persons similarly situated (the "Class") bring this class action against Defendants Capital One Financial Corporation, Capital One, N.A., and Capital One Bank (USA), N.A, (collectively "Capital One" or "Defendants") seeking equitable relief and damages as set forth below.

## INTRODUCTION

1. Capital One is one of the largest banks in the United States with annual revenues of more than 30 billion dollars.

2. A major component of Capital One's business is their credit card division, making up 62.4% of their total revenue (approximately 20 billion dollars).

3. On July 30, 2019, Capital One acknowledged a major data breach – one that affects more than 100 million people.

4. Capital One's lax security and carelessness allowed a hacker to exfiltrate the personally identifiable information ("PII") from credit card applications spanning nearly 14 years.

5. The information stolen by the hacker includes "names, addresses, zip codes/postal

1

codes, phone numbers, email addresses, dates of birth, and self-reported income." Further, at least 140,000 social security numbers, 80,000 bank account numbers and a small segment of transaction data from 23 days in 2016, 2017, 2018 were stolen for certain customers.[1]

6.     Plaintiffs and class members have suffered irreparable harm and are now subject to an increased risk of identity theft. Plaintiffs' and class members' PII has been compromised and they must now undertake additional security measures to minimize the risk of identity theft.

## THE PARTIES

7.     Plaintiff Cindy Bowen is a resident and citizen of Happy Valley, Oregon. Plaintiff Bowen applied for and opened an account with Capital One on or around October 2, 2017. Plaintiff Bowen gave her PII to Capital One so they could process her application. Plaintiff Bowen subsequently received a credit card from Capital One and she has used it regularly since January 2018.

8.     Plaintiff Diane Dillashaw is a resident and citizen of Riverview, Florida. Plaintiff Dillashaw applied for a Capital One credit card in 2015. Plaintiff Dillashaw was a regular Capital One credit card user and customer from 2015-2018. Plaintiff Dillashaw gave her PII to Capital One so they could process her application.

9.     Defendant Capital One Financial Corporation is a Delaware corporation with significant operations and corporate offices in New York, New York, including more than 700 locations in the New York region.

10.    Defendant Capital One, N.A., is a National bank with its principal place of business located at 1680 Capital One drive, Mclean Virginia 22102. Defendant Capital One N.A. is a wholly owned subsidiary of Capital One Financial Corporation.

---

[1] *Facts 2019*, https://www.capitalone.com/facts2019/ (last visited Aug 1, 2019).

11.     Defendant Capital One Bank (USA) N.A., is a national bank with its principal place of business located at 1680 Capital One drive, Mclean Virginia 22102. Capital One Bank (USA) N.A. is a wholly owned subsidiary of Capital One Financial Corporation.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred Class members, a majority of Class Members are citizens of states that are diverse from Capital One, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has jurisdiction because Defendant Capital One Financial Corporation maintains its corporate offices in this District. Defendant is authorized to and conducts business in this District and is subject to general personal jurisdiction in this state.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, Defendant Capital One Financial Corporation maintains its headquarters within this District, and Capital One has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

15.     Capital One claims to "Take our commitment to protection your privacy seriously."



16. Capital One's Cardholder agreement explicitly incorporates Capital One's privacy policy. The Privacy Policy states that "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[2]

17. However, a 100 million people now have had their PII compromised because Capital One did not comply with the law nor did they have a system in place to reasonably detect an intrusion.

18. On July 30, 2019, Capital One disclosed a major security breach that affects all consumers and small businesses who submitted credit applications from 2005 to 2019.

19. Unbelievably, a hacker was able to access and remain undetected in Capital One's internal networks beginning in March 2019. The hacker stole the personal information of nearly 106 million of the company's customers and applicants, including credit scores, credit limits, balances, payment information and contact information.

20. Thereafter, the hacker bragged about stealing the data on a private Slack channel and in a public GitHub post. Specifically, the hacker said via Slack, "I've basically strapped myself with a bomb vest, f-ing dropping Capital One dox and admitting it. I wanna distribute those buckets … There's SSNs . . . with full name and [date of birth]."

21. The hacker then began to publicly post the data on GitHub, an online repository.

22. On July 17, 2019, an unknown individual wrote to Capital One at an email address the company maintains (responsibledisclosure@capitalone.com) for purposes of soliciting disclosures of actual or potential vulnerabilities in its computer systems. The individual stated in the email to Capital One that "There appears to be some leaded s3 data of

---

[2] *What Does Capital One Do with Your Personal Information*?, https://www.capitalone.com/privacy/notice/en-us/. (last visited Aug 1, 2019).

yours in someone's [github account]."

23.     Later, the Federal Bureau of Investigation became aware of the breach and then notified Capital One.[3]  Although the hacker left clues on the Internet regarding the theft of valuable consumer information, Capital One would have remained oblivious to the hacker's unauthorized access into its systems and theft of data had it not been for the FBI's notification or the "white hat" hacker who notified Capital One via email of the unauthorized disclosure.

24.      The information exfiltrated and stolen by the hacker includes names, dates of birth, Social Security numbers, and bank account numbers.[4]

25.     Capital One failed to protect its customers' data by taking any reasonable step to detect intrusions and allowed a hacker to steal 100 million customer's PII without internal detection.  Capital One, which uses Amazon's cloud storage service, allowed a firewall misconfiguration that allowed the hacker, a former Amazon employee, to access 700 folders that contained the data in March 2019.  Specifically, the problem stemmed from a misconfigured open-source Web Application Firewall ("WAF") that Capital One used as part of its cloud hosted operations with Amazon Web Services ("AWS").  The method used by the hacker to steal the information, called a "Server Side Request Forgery" attack, has been well understood for years, according to Krebs on Security.

26.     Capital One's chairman and CEO, Richard D. Fairbank, stated, "While I am grateful that the perpetrator has been caught, I am deeply sorry for what has happened."  He further said, "I sincerely apologize for the understandable worry this incident must be causing those affected and I am committed to making it right."

---

[3] *Krebs on Security*, https://krebsonsecurity.com/2019/07/capital-one-data-theft-impacts-106m-people/ (last visited Aug 1, 2019).
[4] *Facts 2019*, https://www.capitalone.com/facts2019/ (last visited Aug 1, 2019).

27.     Capital One's own Privacy Policy acknowledges that "At Capital One, we make your safety and security a top priority and are committed to protecting your personal and financial information.  If we collect identifying information from you, we will protect that information with controls based upon internationally recognized security standards, regulations, and industry-based best practices."[5]

28.     In addition to compromising existing accounts, the Class members' personal information can be used by identity thieves to open new financial accounts, incur charges in the name of Class members, take out loans, clone credit and debit cards, and other unauthorized activities.

29.     When a hacker is able to access a person's PII, they can use it to commit a whole host of cybercrimes. These Cybercrime are rising at an exponential rate, as shown in the FBI's Internet Crime Complaint statistics chart below:

---

[5] *Capital One Online and Mobile Privacy Statement*, https://www.capitalone.com/identity-protection/privacy/statement (last visited Aug 1, 2019).



30.     To emphasize the large-scale impact of cybercrime, a study released in February 2018 by McAfee and the think tank Center for Strategic and International Studies shows that worldwide, cybercrime costs an estimated $600 billion USD a year.  This increased from $500 billion USD in 2014.  The new estimate amounts to 0.8 percent of global gross domestic product.[6]

31.     Plaintiffs and Class members are at risk for identity theft in its myriad forms, potentially for the remainder of their lives.

32.     Identity thieves can use the PII to harm Plaintiffs and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds,

---

[6] "The Cost of Cybercrime," https://internetsociety.org/blog/2018/02/the-cost-of-cybercrime/ (last visited on June 28, 2019).

7

and obtaining government benefits.

33. In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit.

34. In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

35. The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the PII they have obtained. Indeed, to protect themselves, Class members will need to remain vigilant against unauthorized data use for years and decades to come.

36. Once stolen, PII can be used in several different ways. One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and PII. Websites appear and disappear quickly, making it a very dynamic environment.

37. Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that

process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

38.     Further, an individual's PII has market value and there are markets for that PII. For example, data collection companies, credit reporting companies, and companies that engage in targeted advertising are all willing to pay money to obtain, directly or indirectly, PII from individuals. Indeed, many email and social media service providers require their users to consent to having their information scanned and recorded for selling that information to advertisers. But, the theft of that PII and unauthorized sale of it on the "dark web" diminishes its legitimate market value.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs brings this lawsuit on behalf of themselves and as a class action on behalf of a proposed national class, defined as:

> All individuals residing in the United States whose PII was compromised in the
>
> data breach initially disclosed by Capital One on July 30, 2019 (the "Class").

40.     Excluded from the Class are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest; Defendants' officers, agents, and employees; the judicial officers to whom this action is assigned; and any member of the Court's staff and immediate families.

41.     **Numerosity:** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably believe that Class members number millions of people. As such, Class members are so numerous that joinder of all members is impractical. The names and addresses of Class members are identifiable through documents maintained by Capital One.

42. **Commonality** and **Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

   a. Whether Defendants engaged in the wrongful conduct alleged herein;

   b. Whether Defendants' inadequate data security measures were a cause of the data breach;

   c. Whether Defendants owed a legal duty to Plaintiffs and the other Class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

   d. Whether Defendants negligently or recklessly breached legal duties owed to Plaintiffs and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

   e. Whether Plaintiffs and the Class are at an increased risk for identity theft because of the data breach;

   f. Whether Plaintiffs and the Class have suffered a decrease in the value of their PII because of the data breach;

   g. Whether Plaintiffs and the Class have suffered benefit of the bargain losses because of the data breach;

   h. Whether Plaintiffs and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

   i. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

43. These issues not only predominate, but they are also matters appropriate for issue certification under Rule 23(c)(4).

44.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

45.     **Typicality:** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Capital One. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and there are no defenses that are unique to Plaintiffs.

46.     **Adequacy of Representation:** Plaintiffs are an adequate representative of the class because their interests do not conflict with the interests of the other class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

47.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the

court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Negligence

48. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47, as though fully stated herein.

49. Capital One owed a duty to Plaintiffs and the other Class members to exercise reasonable care in safeguarding and protecting their PII that was in its possession from being compromised, lost, stolen, misused, or disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendants' security systems to ensure that Plaintiffs' and the other Class members' PII was adequately secured and protected. Defendants further had a duty to implement processes that would detect a breach of their security system in a timely manner.

50. Capital One also had a duty to timely disclose to Plaintiffs and the other Class members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiffs and the other Class members could take appropriate measures to cancel or change usernames, pin numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts and take all other appropriate precautions.

51. By being entrusted by Plaintiffs and the Class to safeguard their PII, Capital One had a special relationship with Plaintiffs and the Class. Plaintiffs and the Class signed up for Defendants' services and agreed to provide their PII with the understanding that Defendants would take appropriate measures to protect it and would inform Plaintiffs and the Class of any

breaches or other security concerns that might call for action by Plaintiffs and the Class. But, Defendants did not. Defendants not only knew its data security was inadequate, they also knew they didn't even have the tools to detect and document intrusions or exfiltration of PII. Capital One is morally culpable, given its wholly inadequate safeguards, and refusal to notify Plaintiffs and the Class of breaches or security vulnerabilities.

52. Capital One breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiffs' and the other Class members' PII stored by Defendants; and failing to recognize in a timely manner the breach.

53. Capital One breached its duty to timely disclose that Plaintiffs' and the other Class members' PII had been, or was reasonably believed to have been, stolen or compromised.

54. Capital One's failure to comply with industry regulations and the delay between the first vulnerability date and the date Capital One informed users of the data breach further evidence Capital One's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII.

55. But for Defendants' wrongful and negligent breach of the duties owed to Plaintiffs and the other Class members, their PII would not have been compromised, stolen, and viewed by unauthorized persons.

56. The injury and harm suffered by Plaintiffs and the other Class members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII. Defendants knew or should have known that their systems and technologies for processing and securing Plaintiffs' and the other Class members' PII had security vulnerabilities.

57. As a result of Defendant's negligence, Plaintiffs and the other Class members incurred economic damages, including expenses for credit monitoring, loss of use and value of their debit and/or credit cards, lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; costs associated with placing freezes on credit reports; the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class members; the diminished value of Plaintiffs' and Class members' PII, and expectation damage.

## SECOND CAUSE OF ACTION

### Misrepresentation

58. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

59. As outlined above, Capital One's advertising and privacy policies contained numerous omissions and misrepresentations, regarding the supposed secure nature of its data security for Plaintiffs' PII. Such omissions and representations were false because Capital One failed to disclose they did not use reasonable, industry-standard means to safeguard against hacking and theft of both Plaintiffs' PII.

60. Such representations and omissions were material to Plaintiffs, who reasonably relied on the representations and omissions. Plaintiffs and other members of the Class would not

have agreed to turn over their PII, had they known the truth: that Capital One's services were not as secure as represented or secure by any standard.

63. Capital One intended that Plaintiffs and other Class members rely on its security representations and omissions, as they knew no would-be customer would submit their PII or entrust a business to unreasonable security risks. In reliance on these representations and omissions, Plaintiffs and the Class contracted with Capital One for credit cards or banking services and provided their PII.

62. As a direct and proximate result of Capital One's wrongful actions and inactions, Plaintiffs and Class members have been damaged by having an increased risk of identity theft, including, but not limited to out of pocket expenses for credit monitoring.

63. As a direct and proximate result of Capital One's negligent, and/or willful, actions and inactions, Plaintiffs and Class members experienced damage to their PII supplied to Defendants for purposes of obtaining Capital One's services, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of Capital One's data breach on their lives.

64. As a direct and proximate result of Capital One's negligent, and/or willful, actions and inactions, Plaintiffs and other Class members experienced damage to property that was not the subject of the contracts with Capital One, including but not limited to damage to their credit, and/or being placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Capital One's data breach on their lives.

## THIRD CAUSE OF ACTION

### Breach of Contract

65. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

66. Capital One's Credit Card Agreement and Privacy Policy forms a binding contract between Capital One and its customers when they gave their PII to Capital One. The Credit Card Agreement incorporates the Privacy Policy which states: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."

67. Capital One breached these provisions of the contracts in that it did not have any measures to protect Plaintiffs and Class members' "Personal Information," including, but not limited to, Section 5(a) of the FTC Act, and did not limit access to that information to the specified individuals or entities. Capital One violated its commitment to maintain the confidentiality and security of the PII of Plaintiffs and the Class members and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

68. The data breach reported on July 30, 2019 is a direct and legal cause of the injuries and damages suffered by Plaintiffs and the Class members.

69. Plaintiffs and the other Class members were harmed as the result of Capital One's breach of contract terms outlined above, resulting in the data breach, because their PII and financial information were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII and financial information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the dark web. Plaintiffs and the Class

have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract

70. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

71. To the extent that Capital One's Credit Card Agreement and Privacy Policy did not form express contracts, the use of Defendants' services created implied contracts between Defendants and the Class members, the terms of which were set forth by the relevant Credit Card Agreement, Privacy Policy and other policies.

72. Defendants breached such implied contracts by failing to adhere to the terms of the applicable Privacy Policy. Defendant violated its commitment to maintain the confidentiality and security of the PII of Plaintiffs and the Class, and failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

73. Plaintiffs and the Class members were harmed as the result of Defendants' breach of the implied contracts because their PII and financial information were compromised, placing them at a greater risk of identity theft, and their financial information was disclosed to third parties without their consent. Plaintiffs and Class members also suffered diminution in value of their PII in that it is now easily available to hackers on the dark web. Plaintiffs and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures. The Class members are further damaged as their PII remains in Defendants' possession, without adequate protection, and is also in the hands of those who obtained it without

their consent.

74.     This breach of the implied contracts was a direct and legal cause of the injuries and damages to Plaintiffs and members of the Class as described above.

## FIFTH CAUSE OF ACTION

### Violations of The Virginia Consumer Protection Act

### Va. Code Ann. §§ 59.1-196, et seq.

75.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 47 as though fully stated herein.

76.     Capital One and Plaintiffs are "persons" within the meaning of Va. Code § 59.1-198.

77.     The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

78.     In the course of their business, Defendants through its agents, employees, and/or subsidiaries, violated the Virginia CPA.

79.     As detailed above, Defendants represented that it would protect Plaintiffs and Class members' PII. Defendants, by marketing, offering for sale, and selling its services, engaged unfair or deceptive acts or practices as defined in Va. Code § 59.1-200(A):

80.     Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

81.     Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to timely discover and disclose any security breaches because they possess exclusive knowledge of its internal network.

82. Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

83. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

84. Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Virginia CPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class, respectfully requests that this Court enter an Order:

(1) Certifying the proposed Class, and appointing Plaintiffs as Class Representatives;

(2) Finding that Defendants' conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(3) Enjoining Defendants from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

(4) Awarding Plaintiffs and Class members actual, compensatory, and consequential damages;

(5) Awarding Plaintiffs and Class members statutory damages and penalties, as allowed by law;

(6) Awarding Plaintiffs and Class members pre-judgment and post-judgment interest;

(7) Awarding Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses; and

(8) Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, hereby demand a trial by jury as to all matters so triable.

DATED: August 23, 2019	**LEVI & KORSINSKY, LLP**

*/s/ Courtney E. Maccarone*
Courtney E. Maccarone (CM-5863)
Eduard Korsinsky (EK-8989)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
cmaccarone@zlk.com
ek@zlk.com

**LEVI & KORSINSKY LLP**
Rosemary M. Rivas*
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 373-1671
rrivas@zlk.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
Gayle M. Blatt*
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811
gmb@cglaw.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and Proposed Class*